Curia, per
Wardlaw, J.
This court is entirely satisfied with the views taken on the circuit, of the objection that a portion of the bond was blank when the guaranty was signed. The verdict has established that the defendant authorized the completion of the bond, and the delivery of the guaranty along with it.
So also, the verdict has established that there was no extension of time to Hamilton, or other act of the plaintiffs, by which the defendant was injured ; and the guaranty is absolute, amounting to an engagement to pay according to the tenor of the bond, if the obligor should not. To the maker of such a guaranty, notice is no more important than to an ordinary surety; 20 John. 365 ; 1 M‘M. 76. If the bond was unpaid at its maturity, his liability became fixed, and it is the debtor’s duty to seek the creditor.
Upon the power of the plaintiffs asan incorporated bank to take for a loan of money a bond secured only by guaranty, the argument on the part of the defendant has been strongly pressed.
*286 The preamble of the “Act to establish a Bank on behalf of and for the benefit of the State,” by which this bank was incorporated, (8 Stat. 24) shows that its design was to establish a bank on the funds of the State, for the purpose of discounting paper, and making loans for longer periods than has heretofore been customary; and on security different from what has hitherto been required. The 16th clause of the first section bestows upon the President and Directors the franchise of being a corporation, with all the usual powers of corporations, especially the power “ to have, purchase, receive, possess, enjoy and retain, to them and their successors, lands, rents, tenements, hereditaments, goods, chattels, and effects, of what kind, nature or quality soever, and the same to sell, grant, demise, alien or dispose of,” and the power to ordain by-laws. The 17th clause declares that “they shall also be capable of exercising such other powers and authorities as may be necessary for the well governing and ordering the affairs of the said corporation, and of promoting its interest and its credit; any law, usage or custom, to the contrary notwithstanding.”
Under these expressions of the legislative will, standing alone, the power to make loans upon bonds secured at the discretion of the directors, may have resulted, without other restriction than such as would arise from the nature of the trusts for which the power was to be exercised.
The 4th clause of the first section, however, provides that the President and Directors “ shall receive money on deposit, and pay away the same to order, free of expense ; discount bills of exchange, accepted and payable within the State of South Carolina, and notes with two or more good names thereon, or secured by a deposit of bank or other public stock, at a rate of interest not exceeding one per cent, discount for sixty days; and shall also have power to make loans to citizens of this State, in the nature of discount, on real or personal property, secured by mortgage and power of attorney to confess judgment on default of payment. Provided, that the sum so loaned shall never exceed the one-third part or the real unincumbered value of the property so mortgaged ; and provided further, that the loan shall never be for a longer term than one year, *287 nor draw a greater interest than at the rate of seven per cent, which shall always be paid in advance, and shall always be payable in the months of February or March next succeeding such loan, unless an earlier day be fixed by the borrower ; and provided farther, that no loan be in any case whatever renewed, unless the interest for the ensuing year be paid in advance“ and provided farther, that no individual be permitted to borrow on his own account, on the security of real property, a greater sum than two thousand dollars.”
Yarious other clauses of-the Act make special provisions concerning loans upon mortgages, as to the mode of application, the form of the mortgage, its effects, and the manner of selling under it, the means to be taken for ascertaining the value of the property mortgaged, .and the course to be pursued in calling in the loans. The 2nd section subjects the President and Directors to an action at law, or a suit in equity, to answer to the State for damages incurred “by taking insufficient security” — with certain provisoes ; and the 9lh section of an amendatory Act, (8 Stat. 32) authorizes and requires loans upon mortgage to be made at the Branch Bank at Columbia, as at the principal Bank at Charleston.
It is contended for the defendant, that the express grant of the power to discount bills of exchange and promissory notes, and of the power to make loans on bonds secured by mortgage, impliedly forbids the taking of a bond secured iu any other way, and renders such bond and its guaranty void.
Corporations have only such powers as are specifically granted, or as are necessary for the purpose of carrying into effect the powers expressly granted. 'When the grant is silent as to the contract in question, we are to consider whether a power to make such a contract may not be implied, as directly or indirectly necessary to enable the corporation to fulfil the purpose of its existence, or whether the contract is entirely foreign to that purpose.
In the case of the Utica Ins. Co. vs. Scott, 19 John. 1, and other cases in New York, where securities taken by corporations were held void, there was a statute expressly forbidding such corporations from taking such securities ; *288 bat a distinction was taken between the security and the contract of lending, the latter not being covered by the statute. It will be observed in the case now betore us, that if the bond be void, so is the contract of lending; for if the implied prohibition arise, it extends to every loan not made in the prescribed form. It is, however, too strict to insist that a power which is contained in a general grant, and which in various forms may be pertinent to the purpose of a corporation, may be restricted to a particular form of directions for its exercise in that form. Whether the power to take bonds for money lent, would in general result from the grant of ordinary banking powers or no, loans for long pei’iods on bonds were contemplated by the' charter of the bank now before us. The directions concerning bonds secured by mortgage, seem to amount rather to an express permission for an unusual course of dealing, with guards to prevent abuses in it, than to create any inhibition of other loans, consistent with the purpose of the institution. The State is the sole stockholder in this bank. The Act establishing it contains not only the usual grant of corporate powers, but als'o instructions for the agents of the State who manage it. These instructions have been modified from time to time, at the will of the legislature ; and the long continued usage of the bank to lend money, in certain cases, upon bond secured by personal sureties, appears to have been well known to the legislature. To this case there is particularly applicable the doctrine applied in the cases of Little vs. O’Brien, 9 Mass. 423, and Chester Glass Co. vs. Dewey, 16 Mass. 94; that the contract is good, as between the corporation and the defendant, although, for abuse of its powers, the corporation may be answerable to the government which created it. If the law will not permit a defendant to refuse payment upon his contract with a private corporation, upon the ground that there was mismanagement of the corporate powers in making such contract, it cannot discharge a security, taken within the general scope of the powers of a public corporation, because the public agents may be reprehensible for the neglect of some of the duties prescribed to them. To the personal responsibility of the agents, the *289 State looks for the security of loans irregularly made, but does not reject as worthless a security taken because it may be insufficient. Would a note discounted by. this bank be void, because it had less than two good names 1 or a loan be void because it was made to a person not a citizen of this State ? In either of these cases, as in the one before us, the departure of the agents from their instruc-" tions, would be matter for the consideration of the principal, and not of the person contending with them.
The motion is dismissed.
Richardson, O’Neall, Evans, Butler, and Frost, JJ. concurred.