Hitchcock, J.
This is a creditor’s bill filed in the court of common pleas of Seneca county, on April 1, 1844. The complainants arc judgment creditors of John Walker, having recovered judgments against him in the same court of common pleas in 1838. They seek "to 'obtain satisfaction of these judgments by the sale of lot No. 11, in Tiffin, which had been mortgaged to the defendants, Kemp & Buckoy, in 1837. This mortgage, it is charged by the complainants, was made voluntarily by John Walker, and with a *104 view to delay and defraud his creditors, and they insist that it is therefore, as to them, void. They furthor *seek to obtain satisfaction from a debt due from tho defendant, Shawhan, to Walker, which debt, if any existed, accrued subsequent to tho application of Walker for the benefit of the bankrupt law. Tho bill sets foi’th that Walker, in May, 1842, petitioned for the benefit of this law, and that such proceedings were had, that, in October following, he obtained a certificate discharging him from the payment of all debts due from him at the time of filing his petition. But it is charged that the certificate was obtained by fraudulent practices which are set forth, and was therefore void.
To this bill the defendants, John Walker, Joseph Walker, and Luther A. Hall, filed a demurrer, thereby raising the question, whether a decree in bankruptcy would be collaterally impeached as attempted, by the bill, or whether it must remain obligatory until impeached or set aside in the court where it was rendered.
The court of common pleas overruled this demurrer, and these defendants, together with the other defendant in the case, subsequently answered, some of them at great length, denying the fraud charged in the bill. '
The validity of the mortgage to Kemp & Buckey seems to be admitted in the argument of counsel, and nothing remains but to inquire whether the certificate in bankrupty of Walker was fraudulently obtained; and if so, whether it can be impeached’ in the manner proposed in the present case.
The circumstances which the complainants rely upon to prove fraud, are connected with the mortgage of Kemp & Buckey. This mortgage, which was upon lot No. 11, in Tiffin, was executed in 1837. In tho month of May, 1838, Walker deposited with Kemp & Buckey a note in his favor for $1,000, against Joseph Walker. This note was deposited as collateral security upon the same debt, to secure which the mortgage had been executed. Upon the lot was a dwelling-house and other buildings, and Walker continued in possession of the same up to the time of filing his petition in the district court. Subsequent to this period, *he rented the same for one year to the defendant, Mason, at a rent of six dollars per month. In his schedule, no notice was taken of the debt due from him to Kemp & Buckey, of the deposit of the $1,000 note, nor of the mortgage. It is insisted by complainants that these matters were fraudulently kept from the schedule, in order that *105 Walker might retain the property in his own possession, and enjoy the donefil of it, to the injury of his creditors. Had there been no debt in fact due from Walker to Kemp & Buckey, and had the mortgagobeen fraudulent, it would have furnished strong^ presumptive, if not conclusive proof, of an improper motive on the part of Walkor, in withholding these things from the schedule. But the debt of Kemp & Buckey was a valid, subsisting debt, and the mortgage was properly executed three years before the proceedings in bankruptcy. The $1,000 note was deposited as additional security two years before these proceedings. All presumptions of a fraudulent combination between Walkor and Kemp & Buckey are therefore removed.
We have carefully examined the testimony to ascertain, if possible, whether there was, on the part of Walker, any fraudulent intent in withholding those things from his schedule, but we can discover none. If the testimony on the part of Walker can he credited, it is apparent that he gave a full account of all these matters to his lawyer who made out his papers. On his part there was no concealment. Through the inadvertence or mistake of this lawyer, they did not appear upon tho schedule. So soon as this fact came to tho knowledge of Walker, he did all he could have done to remedy the defect so far as the interest of creditors was concerned. He notified the assignee, and all his interest in lot No. 11 was sold at public auction by that assignee. Complainants suppose that there are some evidences of fraud in tho sale itself; hut we can discover none. True, public proclamation was made that the lot would he sold under the incumbrance of the mortgage, and this was right. The mortgage was not affected by tho proceedings in bankruptcy. *And it seems, from the papers in tho case, that the entire property when sold, in consequence of a proceeding upon tho mortgage, was not sufficient to satisfy the mortgage debt. It ought to be observed, that although Walkor rented the lot to Mason, as before stated, ho declined to receive any part of the rent.
Upon a full consideration of all the evidence in the case, and it is quile voluminous, tho court is satisfied that there is nothing to impeach tho certificate in bankruptcy.
Such being the opinion of the court, it is unnecessary to determine whether such certificate can be invalidated in the manner proposed in the present case. We see no objection, however, to *106 such course of proceeding. If tho bankruptcy be fraudulent, the certificate is unavailing, and if pleaded to an -action for the recovery of a pre-existing debt, might be defeated by a replication setting forth the fraud. 2 How. 202, 209; 1 Denio, 75, 332, 519.
E. Lane and Parish & Saddler, for complainants.
Watson & Stem, for defendants.
Bill dismissed at complainants’ costs.